# IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON

| | | |
|---|---|---|
| In the Matter of the Personal Restraint of | ) ) ) | No. 76489-6-I |
| TIMOTHY ROBERT PAULEY, | ) ) | DIVISION ONE |
| Petitioner. | ) ) | UNPUBLISHED OPINION |
| | ) ) ) ) | FILED: August 13, 2018 |

TRICKEY, J. — In 1981, Timothy Pauley pleaded guilty to three counts of first degree murder for his role in a robbery and triple homicide. The trial court sentenced him to three life terms, which the Indeterminate Sentence Review Board (ISRB) subsequently revised to be consistent with the Sentencing Reform Act of 1981 (SRA), chapter 9.94A RCW. In May 2015, the ISRB reduced Pauley's minimum term and concluded that an RCW 9.95.100 hearing (.100 hearing) should be scheduled to discuss Pauley's eligibility for parole.

After the ISRB reduced Pauley's minimum term, the Seattle Times published an article on his possible early release, which caused significant public concern and backlash. Following Pauley's .100 hearing, the ISRB found Pauley non-parolable and increased his term by a total of 509 months, amounting to an additional 269 months of confinement. Pauley filed a personal restraint petition to challenge this decision. Because the ISRB did not properly consider evidence of

Pauley's rehabilitation when making its determination that he was not parolable, we reverse and remand for a new hearing.

## FACTS

In 1980, Pauley and Scott Smith robbed a tavern. Pauley shot and killed two male employees. One woman died after Smith bound her by the neck and tied her to a post.

Pauley pleaded guilty to three counts of first degree murder, which were counts III, IV, and V of an amended information. He was sentenced to three maximum life terms. The trial court ordered the sentence for count IV to run first, then counts III and V would run concurrently with one another but consecutive to count IV.

In 1992, the ISRB revised Pauley's sentences to make them more consistent with the SRA. The ISRB set a minimum term of 400 months on count III, 320 months on count IV, and 311 months on count V. In keeping with his original sentence, Pauley was to serve the term for count IV first, to be followed by concurrent service of the terms for counts III and V. The ISRB noted that if the SRA had been in effect when Pauley committed his offenses, the three counts would have all run consecutively and thereby resulted in a total of 942 months of incarceration at the high end of Pauley's sentencing range.

The ISRB paroled Pauley on count IV in April 1999. At that time, he began serving the concurrent sentences on counts III and V.

In May 2015, after years of consideration, the ISRB reduced Pauley's minimum term on count III by 60 months, to 340 months. Pauley had already

served approximately 409 months in prison, including 188 months of the ongoing concurrent sentences for counts III and V. The ISRB cited Pauley's "concerted and continuous efforts to continue his education, learn vocational skills, and to help others within his environment in his over 34 years of confinement" as the reason for this exercise of discretion.

The ISRB also considered a psychological evaluation stating that Pauley was at low risk to reoffend and had strong community support that would allow him to transition into the community "with as much success as possible."[1] In addition, Pauley had submitted letters of support that praised his hard work while incarcerated and his moral character. The ISRB acknowledged and commended Pauley for his positive behavior and prolific programming while in prison.[2] The ISRB recommended scheduling a .100 hearing as soon as possible to determine Pauley's eligibility for a Mutual Reentry Plan.

Before Pauley's .100 hearing could take place, the Seattle Times published an article about his potential early release. King County Prosecutor Daniel Satterberg wrote a letter to Governor Jay Inslee, in which Satterberg "strenuously object[ed]" to a reduction of Pauley's minimum term. Satterberg claimed that Pauley's three sentences were required to run consecutively under the SRA, resulting in a standard range sentence of 792 to 1056 months. Satterberg also advocated for inclusion of the original assault and robbery charges to arrive at a

---

[1] Pet'r's App. at I.

[2] Pauley has been actively involved in various programs during his incarceration including, the Concerned Lifers Organization, University Beyond Bars, Prisoners Advisory Committee, and chemical dependency treatment.

minimum term of 1167 to 1554 months. Satterberg requested that Governor Inslee revoke the ISRB's decision to reduce Pauley's minimum term.

The ISRB delayed Pauley's .100 hearing for further analysis of his sentencing structure and related issues. This included an expert independent review of the scoring of Pauley's offenses and calculation of his minimum terms. David Boerner conducted this review and determined that the applicable sentence range for each offense under the SRA would be 240 to 320 months and that the three terms would run consecutively. Boerner concluded that the sentencing range for Pauley's three convictions under the SRA was 720 to 960 months. He also noted that the ISRB had the discretion to set exceptional minimum terms outside this range if it provided "'adequate written reasons.'"[3]

In November 2015, the ISRB relayed these findings to Satterberg in response to his letter to Governor Inslee. The ISRB defended its original determination of Pauley's minimum terms and cited a lack of legal authority to convert Pauley's sentence from concurrent to consecutive. But the ISRB noted that it could impose minimum terms of sufficient length to make Pauley's aggregate confinement term consistent with that of an SRA offender's aggregate term.

Prior to Pauley's .100 hearing, the Washington Senate Law and Justice Committee (the Committee) met to discuss the perceived lack of transparency in the workings of the ISRB. The discussion used Pauley's case as a prime example of this lack of transparency. United States Congressman David Reichert,[4]

---

[3] Resp. at Ex. 10 (quoting RCW 9.95.009(2)).
[4] Congressman Reichert had assisted with the investigation and arrest in Pauley's case as a homicide detective with the King County Sheriff's Office. Congressman Reichert

Satterberg, and family members of Pauley's victims spoke to the Committee about the case and criticized the ISRB. Congressman Reichert expressed amazement at Pauley's possible release, and mentioned that he had called and written to Governor Inslee to express his concern. Neither Pauley nor his counsel were informed of this Senate hearing despite the Committee's examination of Pauley's case.

The ISRB also conducted a meeting with concerned citizens, where it heard statements from the families of Pauley's victims, Satterberg, Congressman Reichert, and King County Sheriff John Urquhart. The meeting included a discussion of the SRA's mandatory minimum sentences, which were compared to Pauley's "impossibly low sentence."[5] The ISRB provided Pauley with a summary of this meeting.

In January 2016, the ISRB held Pauley's .100 hearing. Pauley recounted his role in the robbery and murders. He could not explain his actions to the ISRB members, repeatedly telling them that he "'panicked'" and shot two of the victims.[6]

In March 2016, the ISRB decided that Pauley was not parolable. The ISRB found that an aggregate minimum term of less than 720 to 960 months was unfairly lenient for a pre-SRA defendant convicted of three counts of first degree murder. The ISRB noted that it was required to consider that the SRA mandated consecutive sentences for first degree murder convictions. As a result, the ISRB

---

testified in his role as a previous homicide detective, not as a United States Representative.

[5] Pet'r's App. at P.

[6] Resp. at Ex. 11.

increased Pauley's minimum term to 900 months, consistent with the higher end of the sentencing range that Pauley would have faced under the SRA.[7]

In addition, the ISRB noted that Pauley's role in the murders was "egregious," and that he could only say that he "panicked" and shot his victims even though they were bound and posed no threat.[8] The ISRB stated that it "recognize[d] Mr. Pauley's effort towards rehabilitation in programming and behavior. However in order to be consistent with SRA guidelines and to account for the egregious nature of his crimes, these additional terms are appropriate."[9]

Pauley filed this personal restraint petition alleging multiple grounds for relief from the ISRB's decision.

## ANALYSIS

Pauley's sentence is governed by the indeterminate sentencing provisions of chapter 9.95 RCW under which the trial court sets the defendant's maximum sentence and the ISRB establishes the defendant's minimum term and eligibility for parole. See In re Pers. Restraint of Lain, 179 Wn.2d 1, 11, 315 P.3d 455 (2013). "[T]he minimum term carries with it no guaranty of release; it only establishes a date when the inmate becomes eligible to be *considered* for parole." In re Pers. Restraint of Cashaw, 123 Wn.2d 138, 143, 866 P.2d 8 (1994).

---

[7] The ISRB increased Pauley's minimum term to 580 months on both remaining counts by adding 240 months to count III (previously revised to 340 months) and 269 months to count V. These 509 additional months continue to run concurrently, resulting in a net total of 269 months of added time. Under the revised sentence, Pauley's combined minimum terms for the previously served count and the two concurrent counts is 900 months.

[8] Pet'r's App. at M.

[9] Pet'r's App. at M.

The ISRB may not grant parole unless the inmate is rehabilitated and fit for release. RCW 9.95.100. An inmate is "subject entirely to the discretion of the [ISRB], which may parole him now or never." In re Pers. Restraint of Powell, 117 Wn.2d 175, 196, 814 P.2d 635 (1991). The ISRB has the discretion to consider the rehabilitative aims of the indeterminate sentencing system when making this discretionary decision. Cashaw, 123 Wn.2d at 147. If the inmate is not parolable, then the minimum term is necessarily extended. In re Pers. Restraint of Ecklund, 139 Wn.2d 166, 174, 985 P.2d 342 (1999).

The ISRB is required to make its decision based on the evidence presented at the parolability hearing. In re Pers. Restraint of Dyer, 157 Wn.2d 358, 365, 139 P.3d 320 (2006) (Dyer I). This includes evidence of an inmate's rehabilitation. Dyer I, 157 Wn.2d at 368. When making its decision on parolability, the ISRB's decision is guided by the non-exhaustive list of adequate reasons for non-parolability. WAC 381-60-160; Dyer I, 157 Wn.2d at 363-64. The reasons include, but are not limited to, an inmate's active refusal to participate in programming, disciplinary infractions during incarceration, continuing intent to engage in illegal activity, stated intentions to reoffend or not comply with parole, or substantial danger to the community. WAC 381-60-160. The ISRB's decisions must be reasonably consistent with the SRA while giving public safety considerations the highest priority. RCW 9.95.009(3).

"The [ISRB] has broad discretion but is guided by relevant statutes and its own procedures." Lain, 179 Wn.2d at 11. "[T]his discretion does not enable the ISRB to disregard the evidence presented at the hearing." Dyer I, 157 Wn.2d at

359. Reliance on the nature of an inmate's past crimes and disregard of evidence of rehabilitation conflicts with the ISRB's statutory responsibility to consider the evidence and determine if an inmate is rehabilitated. Dyer I, 157 Wn.2d at 368.

"A petitioner must show he is under unlawful restraint to succeed on a [personal restraint petition] challenge of an ISRB decision." In re Pers. Restraint of Dyer, 164 Wn.2d 274, 285, 189 P.3d 759 (2008) (Dyer II). "[A]n inmate may be entitled to relief solely upon showing the [ISRB] set a minimum term in violation of a statute or regulation." Cashaw, 123 Wn.2d at 140.

An appellate court reviews parole eligibility decisions for an abuse of discretion. Dyer I, 157 Wn.2d at 363. The ISRB abuses its discretion by failing to follow its own procedural rules for parolability hearings or acting without consideration of and in disregard of the facts. Dyer I, 157 Wn.2d at 363.

Here, the ISRB denied Pauley's parole with little discussion of the evidence of his rehabilitation submitted for consideration. Specifically, in the six pages of its written decision, the ISRB made only two comments that touch upon Pauley's rehabilitation.[10] The ISRB ignored evidence of Pauley's psychological evaluation, prolific programming, and letters of support. The ISRB's disregard of the evidence violated its statutory duty to determine whether Pauley is rehabilitated, and thus constituted an abuse of discretion. See Dyer I, 157 Wn.2d at 369.

---

[10] First, the ISRB noted Pauley's inability to explain his actions on the night of the murders. "In his latest hearing, when asked why he had to shoot the victims who were already tied up, he indicated that he 'panicked.'" Pet'r's App. at M. The second statement "recognize[d] Mr. Pauley's effort towards rehabilitation in programming and behavior." Pet'r's App. at M.

Moreover, less than a year before its decision denying his parole, the ISRB commended Pauley on his positive behavior and programming and exercised its discretion to decrease his minimum term. In its decision following Pauley's .100 hearing, the ISRB ignored its prior findings and the evidence of Pauley's rehabilitation.

Contradictory orders are not an abuse of discretion where the ISRB carefully considers evidence of an inmate's rehabilitation and the risk of substantial danger to the community. See Lain, 179 Wn.2d at 25. But instead of analyzing the evidence of Pauley's rehabilitation, the ISRB cited his relatively low minimum term sentence and his role in the murders as the reasons for denying his parole. Neither of these explanations are included in or comparable to the list of adequate reasons to deny parole in WAC 381-60-160. In fact, the ISRB's focus on the egregiousness of Pauley's underlying crimes "conflicts with its statutory responsibility to consider the evidence presented in determining whether a prisoner has established he is rehabilitated." Dyer I, 157 Wn.2d at 368.

The ISRB's failure to consider evidence of Pauley's rehabilitation and its reliance on the relatively low sentence and circumstances of the offenses, was an abuse of discretion. We remand to allow the ISRB to conduct a hearing and properly consider the evidence of Pauley's rehabilitation in accordance with its procedures.[11] See Cashaw, 123 Wn.2d at 150.

---

[11] In light of this result, we do not reach the merits of the other errors asserted by Pauley as grounds for relief.

Reversed and remanded.

Trickey, J

WE CONCUR:

FILED
COURT OF APPEALS DIV I
STATE OF WASHINGTON

2018 AUG 13 AM 9: 19